**Order Filed on March 10, 2023
by Clerk
U.S. Bankruptcy Court
District of New Jersey**

# UNITED STATES BANKRUPTCY COURT
# DISTRICT OF NEW JERSEY

| | |
|---|---|
| In Re:<br><br>**GREGORY JOHN DePAOLO,**<br><br>                 Debtor. | Case No.:     22-12238<br><br>Chapter:     7<br><br>Judge:     John K. Sherwood |
| **HOWARD BLEZNICK and DANIEL ALBIZATA,**<br><br>              Plaintiffs,<br>vs.<br>**GREGORY JOHN DePAOLO,**<br><br>              Defendant. | Adv. Pro. No.:  22-01159 |

## OPINION RE: DEFENDANT'S MOTION TO DISMISS

Howard Bleznick and Daniel Albizati ("Plaintiffs") brought this adversary proceeding against Gregory DePaolo ("Debtor") seeking to prevent the Debtor from discharging his debts in this Chapter 7 case. The Plaintiffs seek this relief based on the Debtor's alleged misconduct in the Chapter 11 case of his pharmacy business, Belzo LLC d/b/a Rockaway Pharmacy & Compounding ("Belzo"), and his failure to disclose assets in his personal Chapter 7 case.

Debtor:        Gregory John DePaolo
Adv. Pro.:        22-01159
Caption of Order: **OPINION RE: DEFENDANT'S MOTION TO DISMISS**

---

The Debtor was the principal and sole member of Belzo. In connection with Belzo's bankruptcy case, the Plaintiffs allege the Debtor siphoned money from the business through member draws, suppressed the value of a part of the business, refused to market the business, and discouraged potential buyers. The Plaintiffs allege that the Debtor tried to sell a part of the business to a friend at a depressed price and retain control of the business. The Debtor argues that the amended complaint should be dismissed because the proposed sale did not happen and, ultimately, Belzo proposed a Chapter 11 Subchapter V plan ("Plan") that was confirmed by this Court without objection by the Plaintiffs. Though some of the Debtor's arguments are compelling, the Court must construe the amended complaint in the light most favorable to the Plaintiffs. Viewed in this manner, sufficient facts have been alleged to show that the Debtor may have committed acts as the principal of Belzo in its Chapter 11 case that could be a basis for the denial of a discharge in the Debtor's individual Chapter 7 case.

The Plaintiffs also seek to deny the Debtor's discharge based on his acts in his personal Chapter 7 case. They have alleged, based on a review of the Debtor's income and expenses in his Chapter 7 schedules, that a substantial amount (approximately $46,000) of pre-petition income should have been in the Debtor's accounts when he filed his Chapter 7 case but was not. Thus, it is plausible that the Debtor may have made a false account, failed to explain a loss of assets, and concealed financial records and assets in his personal Chapter 7 case. For those reasons, the motion to dismiss will be denied.

## JURISDICTION

This Court has jurisdiction over this adversary proceeding pursuant to 28 U.S.C. §§ 1334(b), 157(a), and the Standing Order of Reference from the United States District Court for

the District of New Jersey. This matter is a core proceeding pursuant 28 U.S.C. § 157(b)(2)(J).

Venue is proper under 28 U.S.C. §§ 1408 and 1409(a).

## FACTS & PROCEDURAL HISTORY

The Debtor owned and operated Belzo, a retail pharmacy and compounding business.

[ECF No. 11, ¶¶ 10-11].[1] The Debtor's compounding business consisted of preparing specialized

medications based on doctors' or veterinarians' orders. [ECF No. 11-2, Ex. A, pp. 10-12]. On

July 18, 2014, the Debtor acquired the pharmacy and compounding business for $800,000 from

Alblez, Inc. ("Alblez"). Belzo entered into and the Debtor personally guaranteed a $800,000

promissory note with Alblez, which was owned by the Plaintiffs. Alblez dissolved in 2016 and

the note was transferred to the Plaintiffs. [ECF No. 11, ¶¶ 4-6]. The Plaintiffs filed a proof of

claim in this case for $481,960.41, the balance due under the note. [Debtor Case, Claim No. 12-

1]. In December 2018, the Debtor purchased another compounding business for $75,000. [ECF

No. 11, ¶ 46].

On October 5, 2020, Belzo filed its Chapter 11 bankruptcy case. [ECF No. 11, ¶ 10]. On

January 14, 2021, the Court authorized Belzo to enter into an agreement with New Jersey CVS

Pharmacy, L.L.C., to sell its retail business (but not the compounding business). On February 19,

2021, the Court approved the sale of the retail business to CVS, which generated net proceeds of

$408,364.81. [ECF No. 11, ¶¶ 15-16]. The proceeds were used to fully pay off one of Belzo's

---

[1] Throughout the decision, the Court will cite to three different dockets. When no docket is indicated, the Court is citing to the docket in this adversary proceeding. Otherwise, the Court will refer to the docket in case no. 20-21322 as "Belzo Case" and the docket in case no. 22-12238 as "Debtor Case."

largest secured creditors, Cardinal Health 110 LLC, and make payments to the United States

Trustee. [Belzo Case, ECF No. 110, pp. 7-8, 13].

On February 17, 2021, Belzo filed a motion to sell the compounding business for $75,000

to Curtis Appleby ("Appleby") with whom the Debtor had a long-standing personal relationship.

[ECF No. 11, ¶¶ 17, 32]. Had the sale closed, the Debtor would have remained employed by the

compounding business, managed the business with Appleby, and received a salary of $90,000

per year. [ECF No. 11, ¶ 32].

On March 16, 2021, the Plaintiffs filed opposition to Belzo's proposed sale of the

compounding business. [ECF No. 11, ¶ 19]. The Plaintiffs claimed that $200,000 of the

$800,000 total sale price in the July 2014 sale was attributable to the compounding business and

that the Debtor's purchase of an additional compounding business for $75,000 in December

2018, would put the value of the Debtor's compounding business in the neighborhood of

$275,000.[2] [Belzo Case, ECF No. 121-1, ¶¶ 5-8]. Additionally, the Plaintiffs questioned how the

Debtor arrived at the $75,000 valuation given that Belzo was generating $300,000 in sales per

year. [ECF No. 11, ¶ 48].

The Plaintiffs also claimed the Debtor was acting in bad faith by not marketing the

compounding business to other buyers. According to the Plaintiffs, they unsuccessfully

attempted to get information from the Debtor in order to make an offer to purchase the

---

[2] The July 2014 contract for sale between the Plaintiffs and the Debtor did not specify that $200,000 of the total $800,000 sale price was attributable to the compounding business. [Belzo Case, ECF No. 123, Ex. B].

Debtor:        Gregory John DePaolo
Adv. Pro.:        22-01159
Caption of Order: **OPINION RE: DEFENDANT'S MOTION TO DISMISS**

compounding business.[3] [Belzo Case, ECF No. 121-1, ¶ 17]. In addition, the Plaintiffs alleged

that the Debtor directed his customers to a new compounding business when he, without Court

approval, posted a bulletin on the compounding business's social media page announcing the

closing of Rockaway Pharmacy and Compounding and the transfer of all prescriptions to the

"new compounding pharmacy . . . called DePaolo Compounding." [Belzo Case, ECF No. 121-1,

¶ 20]. The Debtor posted the announcement on February 25, 2021, before the hearing on the

approval of the sale to Appleby. [ECF No. 11, ¶ 34].

On March 18, 2021, Belzo disclosed that it received a competing bid for the

compounding business from Realvio REI LLC ("Realvio"). [ECF No. 11, ¶ 22]. In response to

Realvio's offer, Appleby responded with a competing offer. [Belzo Case, ECF No. 124, Ex. E].

A short time later, Belzo executed another purchase agreement with Appleby for an increased

price. [Belzo Case, ECF No. 124, Ex. E].

On March 19, 2021, the Plaintiffs filed a cross-motion for an order appointing a Chapter

11 trustee. [ECF No. 11, ¶ 23]. On April 9, 2021, the United States Trustee filed a motion

seeking to convert the case to Chapter 7. [ECF No. 11, ¶ 26]. The allegations in the two motions

were similar. Both the Plaintiffs and the United States Trustee accused the Debtor of using

various methods to suppress the value of the compounding business in an attempt to retain

control of the business to the detriment of the creditors. [ECF No. 11, ¶ 27]. Realvio's

representative, Richard Annunziata, filed a certification in support of appointing a Chapter 11

trustee, stating he believed that the Debtor would "do anything to prevent Realvio from

---

[3] The Debtor disputed this claim stating it is not documented and that he cooperated with the Plaintiffs. [Belzo Case, ECF No. 124, ¶ 12].

purchasing the compounding business, including hiding equipment so that Realvio could not conduct its due diligence." [Belzo Case, ECF No. 130, ¶¶ 6, 12, 15]. The United States Trustee also alleged the Debtor had already entered into a lease in Kenvil, New Jersey for his new compounding business. [Belzo Case, ECF No. 142, ¶ 14].

The Debtor contested some of the Plaintiffs' and the United States Trustee's allegations. He claimed there was no evidence that $200,000 of the $800,000 sale price in 2014 was attributable to the compounding business and argued there was a limited market for the compounding business because much of the value stemmed from the Debtor's relationship with his clients. The Debtor contended he did not hide equipment from Realvio and cooperated with Realvio's requests. [Belzo Case, ECF Nos. 124, ¶¶ 13-16; 136, ¶¶ 11-14].

While the parties were exchanging volleys over the fate of the Belzo bankruptcy case and the sale of the compounding business, it appears that Appleby lost interest. On April 9, 2021, Belzo informed the Court that Appleby had withdrawn his bid to purchase the compounding business. [Belzo Case, ECF No. 144, Ex. A]. Additionally, the Debtor indicated that he was prepared to market the compounding business. On April 1, 2021, Belzo sent marketing documents to fifty-six pharmacies. These efforts returned two inquiries, but no concrete offers. [Belzo Case, ECF No. 144, p. 2].

In considering the Plaintiffs' and United State Trustee's motions, the Court recognized that the Debtor, as Belzo's principal, had committed some of the alleged bad acts. Specifically, the Court was disturbed by the fact that the Debtor presumed that Belzo's compounding business would be sold to his friend for $75,000 and that the Debtor would continue to run the business.

Debtor:         Gregory John DePaolo
Adv. Pro.:         22-01159
Caption of Order: **OPINION RE: DEFENDANT'S MOTION TO DISMISS**

The Court was convinced that the Debtor was against the prospect of selling the compounding

business to a third party. However, the Court did not want to burden the case with a Chapter 11

trustee or convert the case to Chapter 7. The compounding business was viable, Belzo qualified

to be a debtor under the newly enacted Subchapter V of the Bankruptcy Code, and a Subchapter

V trustee would be able to provide the necessary oversight of Belzo and the Debtor while

allowing the business to operate without incurring overwhelming administrative expenses.

Thus, on April 15, 2021, the Court entered an order converting Belzo's Chapter 11 case

to a Subchapter V Chapter 11 small business case. The order also denied the Plaintiffs'

application to appoint a Chapter 11 trustee and the United States Trustee's motion to convert the

case to Chapter 7. [ECF No. 11, ¶ 28].

On July 14, 2021, Belzo filed the Plan. Under the Plan, the Debtor continued operating

the compounding business and retained his equity in Belzo. The Plaintiffs, as unsecured

creditors, were to receive a pro rata distribution of all remaining funds after Belzo paid off

administrative claims, secured claims, and priority claims. Belzo proposed to fund the Plan

through a $350,000 tax refund, which it would use to establish a $20,000 cash reserve. The Plan

proposed setting aside $1,000 each month for a period of thirty-six months for the unsecured

creditors. With the money set aside every month and the proceeds from the tax refund, the Plan

provided at minimum $50,000 for the unsecured creditors. Also, to the extent the cash flows of

the compounding business exceeded the minimum required to pay out a $50,000 distribution to

the unsecured creditors, the unsecured creditors would receive the excess for a three-year period.

[Belzo Case, ECF No. 184, pp. 9, 14-16].

On November 12, 2021, the Court confirmed the Plan which was supported by the Subchapter V trustee and unopposed by any creditor. The Plaintiffs, as unsecured creditors, had the opportunity to object to the Plan. The confirmation order contained a provision that the Plan was filed in good faith pursuant to 11 U.S.C. § 1129(a)(3). In addition, the Court found that all creditors either accepted the plan or would receive the same or higher distribution under the Plan than they would in a liquidation. [Belzo Case, ECF No. 210, pp. 5-6].

On March 21, 2022, the Debtor filed his personal Chapter 7 bankruptcy case. [ECF No. 11, ¶ 3]. On June 16, 2022, the Plaintiffs filed this adversary proceeding seeking an order declaring that the Debtor cannot discharge his debts in Chapter 7. The Plaintiffs' theme is that the Debtor had a duty to maximize the value of Belzo's assets for the benefit of the creditors. Instead, the Debtor colluded with Appleby, a friend, to sell him the compounding business for the unreasonably low price of $75,000 with the Debtor remaining in control. [ECF No. 11, ¶¶ 32-33]. The Plaintiffs' claims are supported by the fact that the Debtor set up a new compounding business under the name DePaolo Compounding, entered into a lease for a new location for the business, and spent $15,000-$20,000 on a contractor to prepare and equip the new premises. He also published an announcement on Belzo's Facebook account directing customers to DePaolo Compounding. [ECF No. 11, ¶¶ 34-40]. These acts reflect that it was the Debtor's expectation that his proposed $75,000 transaction with Appleby would be approved and that he was not interested in offers from third parties. The Plaintiffs further allege that the Debtor financed DePaolo Compounding largely from unauthorized member draws from Belzo. The year before Belzo filed for bankruptcy, the Debtor took $237,866.74 in member draws, an average of $19,822 per month. [ECF No. 11, ¶ 69]. From October 2020, when Belzo filed its Chapter 11

Page 9
Debtor:          Gregory John DePaolo
Adv. Pro.:          22-01159
Caption of Order: **OPINION RE: DEFENDANT'S MOTION TO DISMISS**

petition, through mid-March 2021, the Plaintiffs claim the Debtor took on average about $13,000 in member draws per month. [ECF No. 11, ¶¶ 55-61].

The Plaintiffs also claim the Debtor has not accounted for draws he received from Belzo up to the date of filing his Chapter 7 bankruptcy petition. In his schedules, the Debtor lists his average monthly draw from Belzo as $8,271. The Plaintiffs note that, during Belzo's Chapter 11 case, the Debtor's monthly draws were higher. The Debtor's average monthly expenses total $9,081.52. But, $3,086.52 of the expenses is the Debtor's mortgage payment, which the Plaintiffs claim he has not been paying since January 2021. Thus, they claim the Debtor's actual monthly expenses are $5,995. [ECF No. 11, ¶¶ 74-79]. If the Debtor's income from Belzo, before and after the Chapter 11 case, is as set forth in the amended complaint and the Debtor's Chapter 7 schedules and his expenses are $5,995 (because the mortgage was not being paid), there is a plausible argument that the Debtor should have had more cash when the Chapter 7 case was filed. The Debtor reported just $20 in cash and $2,717.91 in the bank.

On August 18, 2022, the Debtor filed a motion to dismiss the Plaintiffs' adversary proceeding on the grounds of res judicata, collateral estoppel, and the exculpation clause in the confirmed Plan in the Belzo case. [ECF No. 4-1]. On October 11, 2022, the Court held a hearing on the motion to dismiss and gave the Plaintiffs leave to file an amended complaint. The Plaintiffs filed their first amended complaint on November 10, 2022. [ECF No. 11]. The Debtor filed supplemental papers seeking to dismiss the first amended complaint on the same grounds. [ECF No. 12].

Generally, the Debtor contends that the issues raised by the Plaintiffs in the first amended complaint either were, or could have been, raised in Belzo's Chapter 11 case. Since the Belzo Chapter 11 case resulted in a confirmed Plan, the Debtor argues the claims against him in this adversary proceeding concerning the Debtor's conduct in the Belzo Chapter 11 case were either adjudicated or waived because the Plaintiffs did not object to confirmation. As to the Plaintiffs' claims concerning the Debtor's missing income, the Debtor says that these claims are based on speculation and that the Debtor has been taking less than $2,500 per week from Belzo since the Plan was confirmed. He also argues that "it is self-evident that unexpected expenses arise…" but does not provide detail as to any such expenses.

## <u>STANDARD OF REVIEW ON A MOTION TO DISMISS</u>

To survive a motion to dismiss for failure to state a claim, a complaint must contain sufficient facts that, when accepted as true, state "a claim to relief that is plausible on its face." *In re Energy Future Holdings Corp.*, 990 F.3d 728, 736-37 (3d Cir. 2021) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks and citation omitted in the original)). Courts are required to accept the factual allegations in the complaint as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief. *Baptiste v. Bethlehem Landfill Co.*, 965 F.3d 214, 219 (3d Cir. 2020); *Landan v. Wal-Mart Real Est. Bus. Tr.*, 775 F. App'x 39, 42 (3d Cir. 2019) (citing *Foglia v. Renal Ventures Mgmt.*, 754 F.3d 153, 154 n.1 (3d Cir. 2014)). Conclusory statements and recitations of the law are insufficient. *In re Energy Future Holdings Corp.*, 990 F.3d at 736–37 (3d Cir. 2021) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). Courts ruling on a Rule 12(b)(6) motion, "must consider only the complaint, exhibits attached to

the complaint, matters of public record, as well as undisputedly authentic documents if the

complainant's claims are based upon these documents." *Mayer v. Belichick*, 605 F.3d 223, 230

(3d Cir. 2010).

## **LEGAL ANALYSIS**

### **A.  Failure to State a Claim under Federal Rule of Civil Procedure 12(b)(6)**

The Debtor claims that the Plaintiffs' amended complaint fails to state a claim upon

which relief can be granted. The Plaintiffs' amended complaint seeks denial of the Debtor's

discharge based on several provisions of 11 U.S.C. § 727(a). Under § 727(a)(2)(A) and (B)

(Count I), the Plaintiffs must show that the Debtor, with intent to hinder, delay, or defraud a

creditor, transferred, removed or concealed his property within one year before filing the petition

or property of the estate after the filing of the petition. Under § 727(a)(3) (Count II), the

Plaintiffs must show that the Debtor "concealed, destroyed . . . or failed to keep or preserve any

recorded information" that related to his financial condition or business transactions. Under §

727(a)(4)(A) (Count III), the Plaintiffs must show that the Debtor made a false oath or account.

Under § 727(a)(5) (Count IV), the Plaintiffs must show that the Debtor "failed to explain

satisfactorily" a loss of assets or deficiency of assets. Finally, under § 727(a)(7) (Count V), the

Plaintiffs must show that, within one year before filing his Chapter 7 petition, the Debtor

committed any of the acts specified in §§ 727(a)(2)-(6) in connection with another case

concerning an insider.

### i.      Failure to State a Claim with Respect to the Debtor's Conduct in his Chapter 7 Case

For Counts I-IV to survive the motion to dismiss the Plaintiffs must show that the Debtor committed certain prohibited acts in his Chapter 7 case. What the Debtor did in the Belzo Chapter 11 case is not relevant for the purposes of these Counts. The Plaintiffs' claims against the Debtor in Counts I-IV rely on the Debtor's failure to account for his member draws from Belzo in his Chapter 7 schedules. They claim the Debtor concealed bank and other financial records under § 727(a)(3), made a false oath or account under § 727(a)(4), failed to explain loss of assets under § 727(a)(5) and, with intent to hinder, delay, or defraud a creditor, transferred, removed or concealed his property after filing his Chapter 7 petition and/or within one year before filing his Chapter 7 petition pursuant to § 727(a)(2)(A) and (B).

The Plaintiffs' claim that the Debtor's member draws from Belzo are not accounted for in his Chapter 7 schedules is plausible. The Plaintiffs allege that, because the Debtor did not pay his $3,086.52-a-month mortgage for fifteen months, about $46,000 is unaccounted for in the Debtor's schedules. And, the Plaintiffs note that in the Debtor's Statement of Financial Affairs, the Debtor states that in the two years prior to his Chapter 7 bankruptcy, he did not make any transfers outside the ordinary course of his financial affairs. Thus, there is some merit to the Plaintiffs' claim that the Debtor should have had more than $20 in cash and $2,717 in the bank when he filed his Chapter 7 case. Though the Debtor may be able to explain that his low cash position was due to unexpected expenses or deferred draws from Belzo, at this stage, he has not fully accounted for funds that he arguably should have received and should still have.

Thus, the Plaintiffs' complaint states a cause of action under §§ 727(a)(2)(A), (a)(3), (a)(4) and (a)(5). The Plaintiffs made a plausible claim that the Debtor concealed financial records, made a false account in his schedules, failed to explain the loss of funds, and concealed or transferred funds away from creditors. The Debtor's motion to dismiss Counts I-IV is denied.

### ii.     Failure to State a Claim with Respect to the Debtor's Conduct in Belzo's Chapter 11 Case

In order to prevail on Count V, the Plaintiffs must show that within one year before filing his Chapter 7 petition, the Debtor committed any of the acts specified in §§ 727(a)(2)-(6) in connection with another case concerning an insider. 11 U.S.C. § 727(a)(7). The other case here would be Belzo's Chapter 11 case. Count V also states a claim under which the Plaintiffs may be entitled to relief.

The purpose of § 727(a)(7) is to ensure that "misconduct in one case by an individual may be chargeable against that individual in other related proceedings." *In re Transportation Management Inc.*, 278 B.R. 226, 237 (Bankr. M.D. Ala. 2002). However, § 727(a)(7) requires that the Debtor committed the specified acts "on or within one year before the date of the filing of the petition." 11 U.S.C. § 727(a)(7).[4] While the Court will not opine as to whether the Plaintiffs meet the timing requirement, the Plaintiffs meet all the other provisions in § 727(a)(7). Belzo is an "insider" under § 727(a)(7). Under 11 U.S.C. 101(31), where a debtor is an individual, an "insider" includes corporations in which the debtor is a "director, officer, or person in control." A limited liability company can be an insider under the section. *In re*

---

[4] The Debtor filed his Chapter 7 petition on March 21, 2022. The one-year lookback period thus begins on March 21, 2021. It is unclear whether the Debtor committed any of the specified acts in § 727(a)(2)-(6) after March 21, 2021. Neither party briefed this issue, and thus the Court will not speculate as to whether the Plaintiffs' complaint alleges causes of action that meet the timing requirement under § 727(a)(7).

*Longview Aluminum, L.L.C.*, 657 F.3d 507, 509 (7th Cir. 2011). Here, the Debtor was in control of Belzo as the sole managing member and the only principal.

The Plaintiffs plead sufficient facts to survive the Debtor's motion to dismiss Count V of the amended complaint. Under § 727(a)(2)(A) and (B), the Plaintiffs plead that the Debtor transferred money from Belzo to himself, concealed certain equipment used by Belzo's compounding business, and tried to drive down the value of the compounding business so that he could sell it to a friend and defraud creditors. Under § 727(a)(3), the Plaintiffs plead that the Debtor concealed or failed to preserve information relating to the true value of the compounding business and information regarding funds taken from Belzo by the Debtor. Under § 727(a)(4)(A), the Plaintiffs plead that the Debtor made a false oath or account in his attempts to sell the compounding business and regarding his member draws from Belzo. And, under § 727(a)(5), the Plaintiffs plead that the Debtor failed to explain the loss of assets, specifically the cash Belzo lost because of the Debtor's member draws. Additionally, even though the compounding business was never sold, the provisions under § 727(a) do not require proof of actual harm to deny a debtor discharge. *See Matter of Smiley*, 864 F.2d 562, 569 (7th Cir. 1989). Even though Belzo withdrew the motion to sell, the Plaintiffs plead sufficient facts to show the Debtor may have committed some of the prohibited acts set forth in § 727(a)(2)-(6). Count V of the amended complaint meets the plausibility requirements under the motion to dismiss standard.

## B.  Res Judicata and Collateral Estoppel

The Debtor argues that all the Plaintiffs' claims were litigated (or should have been) in the Belzo Chapter 11 case and are thus barred under the doctrines of collateral estoppel and res

judicata because of the confirmation of Belzo's Chapter 11 Plan. There is no doubt that the acts

that are the focus of Plaintiffs' amended complaint, the attempted sale of the compounding

business and the alleged siphoning of funds from Belzo by the Debtor, were raised at various

stages in the Chapter 11 case. Because of these allegations, the Court converted the Chapter 11

case to Subchapter V so a disinterested trustee could review the situation and help to formulate a

Chapter 11 Plan that was fair and equitable. The Plaintiffs certainly had the opportunity and the

right to object to the Plan if they felt that it was unfair. They did not object.

But the Plan did not provide for the sale of the compounding business, and it disclosed

that the Debtor's draw from reorganized Belzo would remain at $2,500 per week. [Belzo Case,

ECF No. 184, pp. 16-17]. Also, the Plaintiffs still had the Debtor's personal guaranty to look to if

they did not get full recovery from Belzo. Perhaps for these reasons, the Plaintiffs decided to

"keep their powder dry" at the Plan confirmation stage.

Res judicata precludes re-litigation when there is (1) a final judgment on the merits in a

previous lawsuit; (2) involving the same parties or their privies; and (3) the subsequent suit is

based on the same cause of action. *Selkridge v. United Omaha Life Ins. Co.*, 360 F.3d 155, 172

(3d Cir. 2004). It is undisputed that the Chapter 11 confirmation order was a final judgment on

the merits in the Chapter 11 case.

The Debtor claims that he and Belzo are in privity because the Debtor wholly owns

Belzo. The Plaintiffs argue that res judicata does not apply because the Debtor was not a party in

the Chapter 11 case. Even though the Debtor was not a party to the Chapter 11 case, he and

Belzo are in privity. The Third Circuit applies state law in defining "privity." *See Sec'y United*

Debtor:       Gregory John DePaolo
Adv. Pro.:       22-01159
Caption of Order: **OPINION RE: DEFENDANT'S MOTION TO DISMISS**

*States Dep't of Lab. v. Kwasny*, 853 F.3d 87, 94 (3d Cir. 2017) (applying Pennsylvania law).

Under New Jersey law, parties are considered to be in privity when one party "is a virtual

representative" of the other party or controls the litigation. *State v. Brown*, 394 N.J. Super. 492,

503 (App. Div. 2007). The Ninth Circuit has held that when a shareholder owns "most or all of

the shares in a corporation and controls the affairs of the corporation," privity will be assumed

between the shareholder and the corporation. *In re Gottheiner*, 703 F.2d 1136, 1140 (9th Cir.

1983). The Debtor wholly owns Belzo. As the sole member of Belzo, the Debtor controlled the

affairs of the company and the Chapter 11 litigation. For the purposes of res judicata, there can

be no doubt that the Debtor and Belzo were in privity.

Nevertheless, res judicata does not preclude the Plaintiffs' complaint because the

confirmation of Belzo's Plan and the Plaintiffs' complaint in the Debtor's Chapter 7 case are not

based on the same or similar causes of action. In determining whether two matters are based on

the same cause of action the Third Circuit looks to whether there is an "essential similarity of the

underlying events giving rise to the various legal claims." *CoreStates Bank, N.A. v. Huls Am.,

Inc.*, 176 F.3d 187, 194 (3d Cir. 1999). However, in the context of bankruptcy, a claim should

not be barred unless "the factual underpinnings . . . and relief sought against the parties to the

proceeding are so close to a claim actually litigated in the bankruptcy that it would be

unreasonable not to have brought them both at the same time in the bankruptcy forum." *E. Mins.

& Chemicals Co. v. Mahan*, 225 F.3d 330, 337-38 (3d Cir. 2000).

The relief sought by the Plaintiffs in this adversary proceeding is denial of the Debtor's

Chapter 7 discharge. That relief was not available to the Plaintiffs when Belzo's Plan was

confirmed because the Debtor had not filed his Chapter 7 case. Although the factual

underpinnings for the Plaintiffs' amended complaint are similar to issues raised in the Chapter 11

case and issues that could have been raised in opposition to confirmation of Belzo's Plan, the

Plaintiffs were not obligated to litigate whether the Debtor could obtain a discharge in a future

hypothetical Chapter 7 case. Indeed, the Plaintiffs could not have brought a claim under § 727(a)

against the Debtor in Belzo's Chapter 11 case because the Debtor had not yet sought a Chapter 7

discharge. Because the relief sought in this case is different than the relief the Plaintiffs could

have sought during the confirmation of Belzo's Plan, the Plaintiffs' first amended complaint is

not barred by res judicata.

The Debtor also contends that the amended complaint is barred by collateral estoppel

because the Court decided the issues the Plaintiffs assert in their amended complaint in Belzo's

Chapter 11 case. Again, the big issues raised by the Plaintiffs in the Belzo Chapter 11 case

related to (i) misrepresentation and concealment as to the assets and value of the compounding

business in connection with the sale of that business, and (ii) the Debtor's taking of excessive

draws from Belzo and the use of those draws to fund the compounding business without full

disclosure. These matters were brought to the attention of the Court in the Chapter 11 case, but

after the appointment of the Subchapter V trustee, Belzo's Plan was confirmed. The Court must

decide whether the Plaintiffs should be estopped from objecting to the Debtor's discharge based

on claims that could have been raised in opposition to confirmation of the Plan.

A party seeking to use collateral estoppel to dismiss a cause of action must show that

> (1) the issue sought to be precluded must be the same as the one
> involved in the prior action; (2) the issue must have been actually
> litigated; (3) the issue must have been determined by a valid and

final judgment; and (4) the determination must have been essential
to the prior judgment.

*In re Docteroff*, 133 F.3d 210, 214 (3d Cir. 1997).

For a matter to be "actually litigated," the party against who collateral estoppel is alleged

does not need to be an actual party in the preceding matter. *In re Congoleum Corp.*, 636 B.R.

362, 393 (Bankr. D.N.J. 2022). It only must have had "a full and fair opportunity to litigate the

issue." *In re Azeglio*, 422 B.R. 490, 496 (Bankr. D.N.J. 2010).

As to matters related to the attempted sale of the compounding business by the Debtor

and Belzo in the Chapter 11 case, the Court did not have to decide those matters in the context of

confirmation of Belzo's Plan because these grievances were no longer relevant. In the Chapter

11 case, Belzo's sale motion was withdrawn by the Debtor before the confirmation hearing. The

Debtor decided to continue to own and operate the compounding business within the Belzo entity

and proposed a Plan to pay unsecured creditors from future operating revenues. The Debtor's

alleged undervaluing of the compounding business, lack of proper marketing, and attempt to

maintain control over his business through a sham sale were less relevant, and certainly not

essential to the Court's decision to confirm the Plan. Thus, the Court does not believe that

Plaintiffs' claims, to the extent they rely on matters concerning the valuation or sale of the

compounding business, should be precluded by collateral estoppel.

With respect to the claims that are based on the Debtor's draws from Belzo before

confirmation of the Plan, collateral estoppel might apply if the Court found that these draws were

not excessive and could not be clawed back by Belzo for distribution to creditors. Claims against

insiders for recovery of fraudulent transfers or unauthorized post-petition transfers are property

of a debtor's bankruptcy estate. *See* 11 U.S.C. § 541(a)(3). And, to confirm Belzo's Plan, the

Court had to find that creditors would receive more under the Plan than they would if Belzo's

assets were liquidated in a Chapter 7 case. 11 U.S.C. § 1129(a)(7). This determination is usually

based on a liquidation analysis prepared by the debtor that should include the value of all assets,

including claims against a debtor's principals. Here, there was no reference in Belzo's

liquidation analysis to claims against the Debtor based on excessive draws and the Court

accepted the liquidation analysis for the purposes of confirmation. To be clear, this was because

no party-in-interest, including Plaintiffs, opposed confirmation of the Plan. But Plaintiffs had the

right and opportunity to assert that § 1129(a)(7) was not satisfied at confirmation because Belzo

did not factor its claims against the Debtor into the liquidation analysis. The Debtor's argument

that Plaintiffs' failure to raise this issue at confirmation estops them from raising it now in the

context of the Debtor's Chapter 7 case may have some merit if the Court strictly applies the

*Docteroff* elements above.

But, at this stage of the proceeding, it would be premature to conclude that the issues

concerning the Debtor's draws from Belzo were "actually litigated." The Plaintiffs had the right

and opportunity to litigate the issues at confirmation and did not to do so. However, perhaps the

Plaintiffs considered objecting to confirmation based on the Debtor's excessive draws and, for

good reasons, chose not to do so. If so, collateral estoppel may be inapplicable. Consequently,

the Court is not prepared at this juncture of the litigation to dismiss Plaintiffs' claims against the

Debtor that relate to the Debtor's draws from Belzo on the grounds of collateral estoppel.

The Court's finding of Belzo's good faith in the confirmation order is also not enough to

preclude the claims against the Debtor in this adversary proceeding. In the confirmation order,

the Court found that Belzo proposed *the Plan* in good faith as required under 11 U.S.C. §

1129(a)(3). The Court's finding the Plan was proposed in good faith in the confirmation order

did not constitute a final judgment with respect to the issues the Plaintiffs raise in the adversary

complaint. Belzo proposed the Plan after withdrawing its motion to sell, and after the Chapter 11

case was converted to a Subchapter V case. The Court's finding that Belzo filed the Plan in good

faith does not mean the Court found the Debtor to have acted in good faith throughout Belzo's

bankruptcy case. The Court made no judgment about the Debtor's conduct prior to the filing of

the proposed Plan on July 14, 2021. Therefore, collateral estoppel does not bar the Plaintiffs'

first amended complaint against the Debtor even though the Court found that the Chapter 11 Plan

was filed in good faith.

### C.  Exculpation Clause in Belzo's Chapter 11 Plan

The Debtor argues that the conduct described in Plaintiffs' amended complaint is covered

by the exculpation clause in Belzo's confirmed Chapter 11 Plan. The exculpation clause in

Belzo's Plan provides:

> Exculpation of Debtor, Officers, Members and Agents. The
> Debtor, its Members, Officers, Employees and Agents (including
> any professionals retained by such persons), and the Subchapter V
> Trustee, will have no liability for any act or omission in connection
> with, or arising out of, the pursuit of approval of the Plan or the
> pre-petition or post-petition solicitation of votes for confirmation
> of the Plan, or confirmation of the Plan, or the consummation of
> the Plan, or the transactions contemplated and effectuated by the
> Plan or the administration of the Plan or the property to be
> distributed under the Plan, or any other action or omission related
> to the administration of the Debtor's estate, or in contemplation of
> this Chapter 11 case, *except for willful misconduct or gross
> negligence* as determined by a Final Order of the Court and, in all
> respects, will be entitled to rely upon the reasonable advice of

> counsel with respect to their duties and responsibilities under the
> Plan. The Debtor shall be deemed to have proposed the Plan in
> good faith and in compliance with the applicable provisions of the
> Bankruptcy Code.

[Belzo Case, ECF No. 210, pp. 17-18 (emphasis added)].

Looking at the plain language of the exculpation clause, it carves out an exception for "willful misconduct or gross negligence." The Third Circuit looks to state law to define "willful misconduct." *Vargo ex rel. Vargo v. Plum Borough*, 376 F. App'x 212, 215 (3d Cir. 2010) (applying Pennsylvania state law). Under New Jersey law, willful misconduct means the Debtor "with knowledge of existing conditions," knowing that his conduct will likely cause injury, "consciously and intentionally" does a wrongful act or fails to act on a duty and causes injury or damages. *McLaughlin v. Rova Farms, Inc.*, 56 N.J. 288, 305 (1970). The Plaintiffs' first amended complaint has many allegations of willful or intentional misconduct. Moreover, to the extent the Debtor suggests that his actions were not willful misconduct, this is a factual issue that cannot be decided at the motion to dismiss phase of the case.

## **CONCLUSION**

For the reasons set forth above, the Debtor's motion to dismiss is denied.

**DATED: March 10, 2023**

Honorable John K. Sherwood
United States Bankruptcy Court